Joe Terry POYNER, Plaintiff-Appellant,

v.

ERMA WERKE GMBH and Insurance
Company of North America,
Defendants-Appellees.

No. 78–3105.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 5, 1980.

Decided March 28, 1980.

Craig W. Housman, Williams, Housman & Sparks, Paducah, Ky., for plaintiff-appellant.

C. Sumner Katz, Philadelphia, Pa., and Earle T. Shoup, Paducah, Ky., for Ins. Co. of North Am.

Erma Werke Gmbh, pro se.

Before LIVELY and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

HARRY PHILLIPS, Senior Circuit Judge.

This is a products liability action instituted by Joe Terry Poyner (Poyner), against Erma Werke Gmbh (Erma), a Germany based manufacturer of firearms, and L.A. Distributors, Inc. (L.A.), a New York based distributor of Erma products.

In February 1968, at age 16, Poyner was injured by a bullet wound inflicted from an Erma manufactured .22 caliber semi-automatic pistol. He is now a paraplegic.

In July 1969, Poyner instituted suit against Erma and L.A. Service of process was accomplished against Erma in Dachau, Germany, by virtue of the Kentucky long-arm statute, KRS § 454.210. Apparently on the advice of its American based parent corporation, Lear Siegler, Inc., (LSI), Erma decided not to respond to the suit. Erma apparently did not give timely notice to its liability insuror, the Insurance Company of North America (INA), of the pending action. Because no defense was made, Poyner obtained a default judgment in June of 1972 for $398,830.77 in damages.

By supplemental complaint, Poyner added LSI and INA as additional defendants. The district court held LSI liable under the default judgment. We reversed in *Poyner v. Lear Siegler, Inc.*, 542 F.2d 955 (6th Cir. 1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361 (1977), on the ground that the separate corporate identities of LSI and Erma could not be disregarded.

Thereafter, INA filed a motion for summary judgment asserting numerous grounds for such relief. In September 1977, the district court granted the motion on the ground that the default judgment against Erma was void for lack of *in personam* jurisdiction over Erma and, therefore, there was no valid basis for a claim against INA.

In its motion for summary judgment, INA contended, *inter alia*, that the default judgment against Erma is void on jurisdictional grounds because Erma did not have "minimum contacts" with Kentucky sufficient to justify *in personam* jurisdiction over Erma.

It is well settled that, subject to the requirements of the due process clause of the Fourteenth Amendment, federal courts in diversity actions must look to applicable state law to determine the extent of their personal jurisdiction. *Erie Railroad v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Because the *in personam* jurisdictional reach of a federal district court in a diversity action is determined by the law of the state in which it sits, *Smartt v. Coca-Cola Bottling Corp.*, 318 F.2d 447 (6th Cir. 1963), we look to Kentucky law to determine the power of a Kentucky court to bind Erma by a judgment *in personam.*

This requires an answer to two questions: 1. Has the Legislature of the Commonwealth extended the jurisdictional reach of its courts to non-resident defendants such as Erma? and, 2. Can the jurisdictional reach of those courts be extended to Erma consistent with due process as that concept is delineated in the "minimum contacts" formula of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny?[1] If the Kentucky Legislature has authorized the Kentucky courts to reach to the full constitutional limits in pursuing non-resident defendants, these two inquiries become one. *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968).

We answer both of these inquiries in the affirmative, reverse the jurisdictional holding of the district court and remand this cause for further proceedings.

## I

We look first to the language of the Kentucky long-arm statute. Because Poyner alleged both negligence and breach of warranty against Erma, KRS §§ 454.-210(2)(a) 4 and 5[2] are the statutory provisions in issue. Both are written in the disjunctive.

KRS § 454.210(2)(a) 4 provides that a "person," which pursuant to KRS § 454.-210(1) includes a corporation, cause tortious injury in Kentucky by

1. an act *or*

2. omission outside Kentucky

IF

1. he regularly does *or*

2. solicits business *or*

3. engages in a persistent course of conduct *or*

4. derives substantial revenue from goods

 a. used *or*

 b. consumed *or*

 c. services rendered in Kentucky

PROVIDED that the injury arises out of

1. the doing *or*

2. soliciting of business *or*

3. a persistent course of conduct *or*

4. derivation of substantial revenue in Kentucky.

KRS § 454.210(2)(a) 5 is somewhat similar to KRS § 454.210(2)(a) 4 but rests on breach of warranty. It extends jurisdiction against a corporation which causes an injury in Kentucky by breach of warranty in the sale of goods outside Kentucky when

1. the seller knew such person would

 a. use,

 b. consume *or*

 c. be affected by the goods in Kentucky

IF

1. he also regularly

 a. does *or*

 b. solicits business *or*

---

1. *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); and, most recently, *World-Wide Volkswagen Corp. v. Woodson*, —— U.S. ——, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

2. KRS § 454.210 reads in pertinent part:

 (2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

 \* \* \* \* \* \*

 4. Causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this commonwealth, provided that the tortious injury occurring in this commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the commonwealth;

 5. Causing injury in this commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this commonwealth;

c. engages in a persistent course of conduct *or*

d. derives substantial revenue from goods

1) used *or*

2) consumed *or*

3) services rendered in Kentucky.

KRS § 454.210 became effective on June 13, 1968. Prior to that time, KRS § 271.610 (1946) governed the service of process in Kentucky. This court interpreted KRS § 454.210 in *Etheridge v. Grove Manufacturing Co.*, 415 F.2d 1338, 1340 (6th Cir. 1969), and held: "This new statute *extends* the permissible scope of jurisdiction over out-of-state corporations with minimal contacts in Kentucky." (Emphasis supplied.)

It is clear that the Kentucky Legislature, in enacting the "new and broader" KRS § 454.210, intended to extend the permissible scope of jurisdiction over foreign corporations with minimal contacts in Kentucky, which previously could have been sued in Kentucky courts only in "a cause of action arising out of or connected with the doing of business by such corporation in [Kentucky]," KRS § 271.610(2). In *Etheridge* we noted:

In enacting the 1968 statute, the Kentucky Legislature recognized the narrowness and restrictiveness of the 1946 law. The caption and preamble of the 1968 statute is as follows:

"AN ACT relating to jurisdiction of the Courts of Kentucky.

"WHEREAS, persons have acted directly and through agents in the Commonwealth of Kentucky.

"WHEREAS, those persons have caused injury and property damage and financial inequities in the Commonwealth.

"WHEREAS, remedy cannot presently be had against those persons in our Courts due to their non-residence within the Commonwealth.

"WHEREAS, the progress and tranquility of our Commonwealth can be best assured through the complete settlement of disputes."

Kentucky Acts 1968, p. 152.

415 F.2d at 1340–41.

Further, the Court of Appeals of Kentucky, then the highest court of the Commonwealth, in *Ford Motor Credit Co. v. Nantz*, 516 S.W.2d 840 (Ky.1974), in discussing the long-arm's venue provision, KRS § 454.210(4), recognized that "KRS § 454.-210 was designed to extend the permissible scope of jurisdiction over foreign corporations with minimal contacts in Kentucky." *Id.* at 842, citing *Etheridge, supra.*

Recently, the Kentucky Court of Appeals, now the intermediate appellate court, in *Volvo of America Corporation v. Wells*, 551 S.W.2d 826 (Ky.App.1977), recognized that KRS § 454.210(2)(a) 5 is to be interpreted as coextensive with the outer limits of due process. In upholding the constitutionality of KRS § 454.210(2)(a) 5, the *Volvo* court quoted *Keckler v. Brookwood Country Club*, 248 F.Supp. 645, 649 (N.D.Ill.1965):

When a manufacturer voluntarily chooses to sell his product in a way in which it will be resold from dealer to dealer, transferred from hand to hand and transported from state to state, he cannot reasonably claim that he is surprised at being held to answer in any state for the damage the product causes. Nor can he deny the substantial interest of the injured person's state in providing a convenient forum for its citizens. *Volvo, supra*, at 828.

*Volvo of America Corporation* was held to be subject to *in personam* jurisdiction pursuant to KRS § 454.210(2)(a) 5 because "it [is] not unreasonable to require the Volvo companies to be responsible for their product after the product enters the main stream of commerce." *Id.* at 827. The court assumed that defendants knew or should have known that cars shipped to a Huntington, West Virginia, dealer might be sold in Kentucky. Further, Volvo advertised in Kentucky and authorized dealer service in the Commonwealth. This was held to qualify for *in personam* jurisdiction under the section of the statute requiring that "he also regularly does or solicits business" and "engages in a persistent course of conduct."

The *Volvo* court noted at 828:

If the contentions of the defendants-appellants in this case were upheld there would be no way that you could have a products liability case or breach of warranty case brought in any state except where the manufacturer or distributor of the product had its place of business. Certainly that would be an illogical and unfair doctrine and contrary to the trend of the federal cases on this particular point.

 It is amply clear that although the Kentucky Court of Appeals no longer is the court of last resort in Kentucky, its pronouncements constitute the rule of decision when it has not been expounded by the highest court of the state, *Fidelity Trust Co. v. Field*, 311 U.S. 169, 177, 61 S.Ct. 176, 177, 85 L.Ed. 109 (1940). The decision of the Kentucky Court of Appeals should be followed by a federal court in deciding a question controlled by the law of the Commonwealth. *See also Simpson v. Jefferson Standard Life Insurance Co.*, 465 F.2d 1320, 1323 (6th Cir. 1972).

 When a state legislature authorizes *in personam* jurisdiction over a non-resident defendant, that jurisdiction must be consistent with due process as delineated in the "minimum contacts" formula of *International Shoe Co. v. Washington, supra*, and its progeny. *International Shoe* held that:

[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." 326 U.S. at 316, 66 S.Ct. at 158.

Three criteria have been delineated for determining the limits of due process within the "minimum contacts" formula of *International Shoe:*

From these two cases,[3] three criteria emerge for determining the present outerlimits of *in personam* jurisdiction based on a single act. First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. (Footnote omitted.) *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

 Has Erma purposefully availed itself of the privilege of acting in Kentucky or causing a consequence there? We find that it has. Erma is located in Germany. It is a wholly owned subsidiary of its American parent corporation, LSI. Rather than distributing its products in the United States through its own corporate organization, Erma elected to utilize the services of an American based distributor, L.A. The use of an independent distributor so that the manufacturer is only indirectly responsible for the product reaching an injured consumer, in and of itself, will not insulate a non-resident foreign corporation from suit. *Eyerly Aircraft Co. v. Killian*, 414 F.2d 591 (5th Cir. 1969).

L.A. is a New York based distributor of Erma products. Although Erma engaged other distributors at times unspecified in the record, the record reveals that Erma had an agreement with L.A. that the latter

**3.** The two cases referred to are *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The former upheld jurisdiction where the suit was based on a contract which had substantial connection with the state. The latter held that an interest in the plaintiff or an interest in the cause of action are not by themselves sufficient to justify *in personam* jurisdic-

tion over a non-resident defendant. *Hanson* admonished that to satisfy the requirements of due process, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson, supra*, 357 U.S. at 253, 78 S.Ct. at 1240.

would be the sole United States distributor for Erma. The record also shows Erma's efforts to maximize sales in the United States and that the district court found Erma to be "a strong backstage promoter of its products throughout the United States." L.A. conducts nationwide advertising. It sells to a distributor in Lexington, Kentucky, has a salesman in Tennessee and a warehouse in North Carolina, all capable of selling to or servicing customers in Kentucky. L.A. also has solicited business in Kentucky through telephone calls and mail order catalogues. The district court specifically found that "Erma was certainly aware of LA's activities to sell Erma products." We have little difficulty in finding that Erma has purposefully availed itself of the privilege of acting in Kentucky or causing a consequence there.

Did this cause of action arise from Erma's activities in Kentucky? The pistol admittedly was manufactured by Erma. It its brief, Erma asserts that the firearm was sold by L.A. to Stewart Bear of Nashville, Tennessee, which was the last sale reflected by the record, although the firearm was owned by Lee Dyer of Paducah, Kentucky, at the time of Poyner's injury. The brief then asks "Query: Where and from whom did he buy it?"

What Erma has failed to mention is that Steward Bear of Nashville, Tennessee, is a salesman for L.A., employed on a commission basis. In light of the relationship between Erma and L.A. and between L.A. and Stewart Bear, we find it more probable than not that this cause of action arose from Erma's activities in Kentucky.

█ Lastly, did the acts or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over Erma reasonable? Again, we answer this question in the affirmative. The issue is whether Erma has such "minimum contacts" with Kentucky that the exercise of *in personam* jurisdiction will not offend "traditional notions of fair play and substantial justice." *International Shoe, supra,* 326 U.S. at 316, 66 S.Ct. at 158. The term "contacts" covers

a myriad of factors. As we stated in *Velandra v. Regie Nationale Des. Usines Renault,* 336 F.2d 292, 295 (6th Cir. 1964):

> The existence or non-existence of the necessary "minimum contacts" to justify the upholding of personal jurisdiction over foreign corporations under the Fourteenth Amendment as interpreted in the *International Shoe Company* case must obviously be worked out with reference to the facts of a particular case rather than in a statement of dogmatic rules of all-inclusive principles.

However, as recently stated in *World-Wide Volkswagen Corp. v. Woodson,* —— U.S. ——, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980):

> The concept of minimum contacts . . . can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

Under *International Shoe, supra,* 326 U.S. at 317, 66 S.Ct. at 158, the protection against inconvenient litigation rests on the relationship between the defendant and the forum which must be such that it is "reasonable . . . to require the corporation to defend the particular suit which is brought there." Pursuant to *McGee, supra,* the burden on defendant will be considered in light of other relevant factors, including the forum state's interest in adjudicating the dispute. *See also World-Wide Volkswagen, supra.* We hold the interest of the Commonwealth in adjudicating this dispute to be an important factor in the resolution of the issue at bar.

The course of international trade has changed dramatically since the close of World War II. The United States has become a much sought after market for industries of other nations. The influx of foreign goods to our shores greatly altered the balance of trade during the 1970's and many foreign enterprises dominate our

markets against their American competitors.

We conclude that we are not required to deny jurisdiction under the facts at bar on the basis of *Velandra v. Regie Nationale Des Usines Renault,* 336 F.2d 292 (6th Cir. 1964). Given the inherently dangerous nature of the instrumentality in question, *Velandra, supra,* 336 F.2d at 298, the historical trade developments recognized in *McGee supra,* 355 U.S. n. 1, at 222–23, 78 S.Ct. at 200–201 and *World-Wide Volkswagen, supra,* n. 1, the language of the Kentucky Legislature in enacting KRS § 454.210, and the broadening of jurisdictional concepts, it is important that cases involving this issue be resolved on their individual merits on a case-by-case basis.

As recognized in both the majority and dissenting opinions in *World-Wide Volkswagen, supra,* modern transportation and communication have facilitated this process, greatly increasing the amount of business conducted across sovereign boundaries. *See also McGee, supra.* As recognized in *McGee* this growth in markets, transportation and communication, in effect, have also made it much less burdensome for a party to defend himself in a state where he engages in economic activity.

While minimum contacts also serve the related function of checking the jurisdictional reach of coequal sovereigns in a federal system, the impact of such a purpose is minimized in an international setting as opposed to interstate operations.

 We hold that the Kentucky Legislature has authorized the Kentucky courts to reach to the full constitutional limits in entertaining jurisdiction over non-resident defendants. We further hold that Erma has sufficient contacts with Kentucky, as hereinabove discussed, to bring it within KRS § 454.210(2)(a) 4 and 5 as to doing or soliciting business or engaging in a persistent course of conduct in Kentucky. We also find that the minimum contacts of Erma with Kentucky fall within the constitutional limits of due process as enunciated by *International Shoe* and its progeny. Erma purposefully availed itself of the privilege of conducting business within Kentucky, thus invoking the benefits and protections of its laws. Injuries caused by inherently dangerous articles imported through independent distributors certainly fall within that class of litigation with which the forum state has a deep interest in adjudicating. Given Erma's contacts with Kentucky and balancing the plaintiff's interest and ability to adjudicate his cause and obtain effective relief as against Erma's burden of litigating this matter in Kentucky, we conclude that it is reasonable and fair to require Erma to litigate the action in Kentucky.

In summary, a foreign corporation, Erma, manufactured a dangerous weapon (a gun which is alleged to have made plaintiff a paraplegic), and sold it in the United States through an American distributor. Now the insurer (INA) of the German manufacturer tries to say that since Erma is not "present", neither Erma nor its insurer can be accountable for an allegedly defective product. The tragic injury to appellant occurred in Kentucky. Erma was served process under the Kentucky long-arm statute and ignored it. Just as a court of the Commonwealth was held to have jurisdiction in an action involving a Volvo automobile sold in West Virginia, *see Volvo of America v. Wells, supra,* 551 S.W.2d 826 (Ky.App.1977), we hold that the jurisdiction of the district court under the Kentucky long-arm statute is not affected by the fact that the last recorded sale of the gun was made in Tennessee.

We note that it was Erma's deliberate decision to ignore the service of process that led to the default judgment in favor of Poyner.

Since the district court had *in personam* jurisdiction over Erma, we reverse the judgment in this action and remand the case for further proceedings not inconsistent with this opinion. On remand the district court may consider the other grounds asserted for summary judgment. It also may entertain a motion to set aside the default judgment and dispose of the case on its merits.