**Roger L. HANDLEY, Plaintiff-Appellee,**

v.

**INDIANA & MICHIGAN ELECTRIC CO., Defendant-Appellant.**

No. 82–5694.

United States Court of Appeals,
Sixth Circuit.

Dec. 8, 1983.

Decided April 26, 1984.

Rehearing and Rehearing En Banc Denied June 12, 1984.

---

John B. Pinney, argued, Graydon, Head & Ritchey, Cincinnati, Ohio, John R.S. Brooking, Adams, Brooking & Stepner, Covington, Ky., for defendant-appellant.

Meredith L. Lawrence, argued, Covington, Ky., for plaintiff-appellee.

Before LIVELY, Chief Judge, KRUPANSKY, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

LIVELY, Chief Judge.

The question in this appeal is whether the district court had personal jurisdiction over a nonresident corporate defendant which was served with process pursuant to the Kentucky long arm statute. The plaintiff (Handley) is a seaman who sought damages for personal injuries suffered while working on one of the defendant's barges. Handley is a resident of West Virginia.

The "pilot house daily log sheet" showed that the barge on which Handley was injured had been picked up in West Virginia. While still in West Virginia waters Handley hurt his back in trying to pull a "barge wire" aboard a barge with the assistance of one other seaman. The defendant (I & M) is an Indiana corporation with its principal place of business in West Virginia. The action was brought under the Jones Act, 46 U.S.C. § 688 (1976)[1] and the general maritime law; subject matter jurisdiction is admitted. The district court found that it had personal jurisdiction over I & M and awarded damages to Handley following a nonjury trial. On appeal the defendant acknowledges that Rule 52(a), Fed.R.Civ.P., controls any review of the merits of the case and it seeks reversal solely on its claim that the district court lacked personal jurisdiction.

## I.

### A.

◼ This court has dealt with the issue of personal jurisdiction over nonresident defendants in a number of cases, almost exclusively, however, when subject matter jurisdiction has been based on diversity of citizenship. Our leading case of this variety is *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968), which involved the Tennessee long arm statute. *See also Poyner v. Erma Werke GMBH*, 618 F.2d 1186 (6th Cir.1980) (the Kentucky long arm statute); *Welsh v. Gibbs*, 631 F.2d 436 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981) (the Ohio long arm statute); and *Nationwide Motorist Ass'n of Michigan v. Freeman*, 405 F.2d 699 (6th

---

1. The Jones Act provides:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

Cir.1969) (the Michigan long arm statute). In all of these cases, whether the plaintiff's claim was based on tort or breach of contract, decision of the personal jurisdiction question turned on whether the nonresident defendant had sufficient "minimum contacts" with the forum state to satisfy Fourteenth Amendment due process requirements. The territorial limitations on the jurisdiction of state courts require this determination in diversity cases. When personal jurisdiction of a federal district court over a nonresident of the forum state is challenged in an action whose subject matter jurisdiction is based on a federal statute, a different inquiry must be made. As part of a national system of courts a federal district court considering a case that arises under federal law is not subject to precisely the same due process limitations which restrict its reach in diversity cases. It is clear, however, that Rule 4, Fed.R.Civ.P., affects personal jurisdiction of district courts by placing territorial limits on their process.

■ When a federal statute creating a substantive right contains no process provisions service of process in a district court action over a nonresident defendant who is not found in the forum state is governed by the applicable statute or rule of that state, under Rule 4(e), Fed.R.Civ.P.:

> **(e) Summons: Service Upon Party Not Inhabitant of or Found Within State.** Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides

> (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, or (2) for service upon or notice to him to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may in either case be made under the circumstances and in the manner prescribed in the statute or rule.

### B.

In *Southern Machine Co. v. Mohasco Industries, Inc.,* supra, this court noted that "a 'long arm statute' may be used in a federal question action." 401 F.2d at 376 n. 2. However, the court did not explore the question of whether the same limits on personal jurisdiction apply as when diversity of citizenship is the basis of subject matter jurisdiction. This question was addressed in *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229 (6th Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981), where one of the defendants was an alien corporation. After holding that the plaintiff had not established sufficient contacts with Michigan to support personal jurisdiction over the nonresident defendant pursuant to Michigan's long arm statute, *id.* at 1236–37, the court considered Chrysler's argument that the court had personal jurisdiction on a theory of "aggregate contacts." [2] Under this theory, as stated by the court,

> jurisdiction over a foreign corporation being sued on a federal cause of action may be founded on the corporation's contacts with the United States as a whole as opposed to its contacts with the forum state. This "national contacts" or "aggregate contacts" concept is based on the proposition that a court's jurisdictional power to render a binding judgment on federal questions must be examined in light of the due process clause of the

---

**2.** Though the aggregate contacts approach is most frequently applied to "alien" corporations, those incorporated outside the United States, it is also applied to "foreign" corporations, those

incorporated outside the forum state. *See* Note, *Alien Corporations and Aggregate Contacts: A Genuinely Federal Jurisdictional Standard,* 95 Harv.L.Rev. 470, 475–76 (1981).

Fifth rather than the Fourteenth Amendment.

*Id.* at 1237–38 (footnote and citation omitted). The court concluded that it was not required to determine whether to adopt the "aggregate contacts" rationale since Chrysler had failed to establish sufficient contacts even under that approach.

The issue is one which has divided the courts and has concerned commentators. In *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280 (3d Cir.1981), the majority found that personal jurisdiction over an alien corporation sued in the district court in New Jersey was limited by the provisions of the New Jersey long arm statute. The action, by a longshoreman for personal injuries, was based on the court's admiralty jurisdiction. The court acknowledged that the New Jersey statute was intended to extend jurisdiction to the limits permitted by the due process requirements of the Constitution. It recognized "[t]he anomaly of a federal court being limited by the requirements of the fourteenth amendment in a nondiversity case," but concluded that Congress intended this result by its failure to authorize nationwide service of process for admiralty cases. *Id.* at 284.

The *DeJames* majority concluded that the personal jurisdiction of a district court over a nonresident defendant served under a state long arm statute is subject to the same limitations as that of a state court using the same statute. Judge Gibbons, in dissent, argued that the majority's Fourteenth Amendment analysis was improper.

When a court asserts personal jurisdiction over a foreign defendant on the basis of a state law claim, it must ensure that the forum state does not unduly encroach on a sister state's interests. When a court, state or federal, adjudicates a federal claim, the federalism issue is of no relevance, for the court determines the parties' rights and liabilities under uniform, national law. No state intrudes on another's interests. The only relevant interest is the national one. Thus the applicable constitutional due process provision should not be the

fourteenth amendment, but the fifth amendment.

*DeJames,* 654 F.2d at 292 (Gibbons, J., dissenting). In determining fairness under the Fifth Amendment, Judge Gibbons argued, the defendant's national contacts, not those with the particular location where the claim arose, should be considered. *Id.*

The Fifth Circuit has wrestled with this issue and has decisions of recent vintage which reach irreconcilable results. In *Terry v. Raymond International, Inc.,* 658 F.2d 398, 402–03 (5th Cir.1981), *cert. denied,* 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 443 (1982), and *Lapeyrouse v. Texaco, Inc.,* 693 F.2d 581, 585 (5th Cir.1982), the court held that the sole test of personal jurisdiction in federal question cases is one of constitutionality. Under this reasoning a state long arm statute merely prescribes the manner in which a nonresident may be served in a federal question case; the fact that a state statute may assert jurisdiction as well as prescribing the manner of service is "irrelevant." *Terry,* 658 F.2d at 402. On the other hand, in *Burstein v. State Bar of California,* 693 F.2d 511 (5th Cir.1982), and *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260 (5th Cir.1983), the court concluded from the language of Rule 4(e) that where a federal statute contains no provision for service of process, personal jurisdiction over a nonresident defendant in a federal question case is limited by the "circumstances" as well as the "manner" prescribed for service of process in the applicable state statute or rule. Applying this reasoning a federal court will maintain personal jurisdiction over a nonresident defendant only if the plaintiff establishes that one or more of the conditions relating to contacts with the forum state set forth in the state long arm statute have been satisfied. Thus it is the state's standard of amenability which controls where the state's long arm statute is utilized to bring an out-of-state defendant before a federal court, though the action is based on a provision of federal substantive law.

As noted earlier, the issue raised by this appeal has attracted the interest of com-

mentators. Some commentators have been critical of the interpretation by a number of courts that Rule 4(e) adopts state provisions on amenability to service of process as well as those relating to the manner of service. *See, e.g.,* A. von Mehren & D. Troutman, *Jurisdiction to Adjudicate: A Suggested Analysis,* 79 Harv.L.Rev. 1121, 1123 n. 6 (1966) ("... in enforcement of claims arising under federal law, there is little reason for a federal court to refuse to proceed merely because the courts of the state in which it is sitting would not claim jurisdiction."); Note, *Alien Corporations and Aggregate Contacts: A Genuinely Federal Jurisdictional Standard,* 95 Harv.L.Rev. 470, 472 (1981) ("The most obvious impact of state long-arm statutes on federal jurisdiction is to limit the full enforcement of federal law."). On the other hand, in *DeMelo v. Toche Marine, Inc.,* 711 F.2d at 1267, the court found support for its conclusion that amenability is controlled by the provisions of state long arm statutes in two respected treatises on federal courts. *See* 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1075 at 312–13 (1969 & Supp.1982); 2 J. Moore, J. Lucas, H. Fink & C. Thompson, *Moore's Federal Practice* ¶¶ 4.32[1], 4.41–1[3] (1982).

## II.

### A.

The Jones Act does not contain a provision for service of process, and I & M was served pursuant to the Kentucky long arm statute. The manner of service in this case is not in issue. The plaintiff followed the "how to" provisions of the long arm statute and the secretary of state of Kentucky promptly sent a copy of the complaint to the defendant. The portion of the Kentucky long arm statute setting forth the circumstances under which a nonresident may be served are set forth in Kentucky Revised Statutes (KRS) 454.210(2). The provisions relating to claims for tortious injuries are found in KRS 454.210(2)(a)1–4:

(2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth....

KRS 454.210(b) makes it clear that the circumstances set forth in subsection (a) are exclusive:

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

Handley attempted to prove that his claim arose from I & M's causing the injury by an act or omission in Kentucky, the circumstance recited in KRS 454.-210(2)(a)3. He testified that the barge wire which he was pulling out of the river when he injured himself might have fallen overboard in Kentucky waters. However, the proof of this "act or omission in Kentucky" was speculative at best, and did not establish this fact by a preponderance of the evidence. When a court rules on a challenge to personal jurisdiction after hearing evidence, as opposed to considering a motion supported by an affidavit, the plaintiff's burden is to demonstrate the existence of facts supporting jurisdiction by a preponderance of the evidence. *Welsh v. Gibbs,* 631 F.2d at 439. There is no contention that Handley's claim arose out of contracting to supply goods or services in Ken-

tucky and it is clear that I & M did not cause the injury in Kentucky by an act or omission somewhere else. Handley was injured in West Virginia. Thus neither subsection (2)(a)2 nor (2)(a)4 applies.

The district court appears to have relied on KRS 454.210(a)(2)1 in finding personal jurisdiction. In an oral ruling on the defendant's motion to dismiss, made after all the proof was in, the district judge said:

> I think the evidence shows that the operations of this company are more or less continuous up and down the river and we're talking about ... a failure to take action on certain practices and certain people on the crew and the boats do go up and down the river through Kentucky or by Kentucky and I think that's sufficient.

### B.

■ We agree with the district court that I & M's activities satisfied the requirements of the Kentucky long arm statute regarding the circumstances under which a nonresident defendant may be served with process. In reaching this conclusion we note our agreement with Judge Gibbons that a Fifth Amendment analysis of due process is different from one undertaken under the Fourteenth Amendment. This is implicit in the Supreme Court's treatment of the Fourteenth Amendment analysis in *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Justice White described two distinct but related functions performed by the Fourteenth Amendment due process requirement of minimum contacts between the nonresident defendant and the forum state:

> It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And its acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

*Id.* at 291–92, 100 S.Ct. at 564–65. Obviously the second of these functions applies only to actions in state courts and diversity actions in federal courts. When a federal court is hearing and deciding a federal question case there are no problems of "coequal sovereigns." That is a Fourteenth Amendment concern which is not present in actions founded on federal substantive law. Thus, in our due process analysis of the present case in the light of the Kentucky long arm statute we will be concerned only with whether the district court's assertion of jurisdiction unfairly burdened I & M with the requirement of litigating in an inconvenient forum.

### III.

#### A.

■ The Kentucky long arm statute is intended to reach to the limit permitted by the Constitution. *Poyner v. Erma Werke GMBH*, 618 F.2d at 1192. Thus, we should construe "arising from ... transacting any business" in favor of personal jurisdiction unless to do so would violate I & M's constitutional right to due process.

The evidence discloses that I & M's barges moved up and down the Ohio River and in doing so traversed Kentucky waters. They stopped from time to time at various ports in West Virginia, Ohio, Kentucky and Illinois, and they took on fuel and stores at Kentucky landings. There was evidence that barge wires, or cables, like the one Handley was pulling aboard when injured, were routinely permitted to fall over the sides of barges. The district court stated its finding of liability as follows:

> So I would have to find and I will so find that the fact that these cables were allowed to fall over the sides so frequently and that men had to go on the decks in the dark in dangerous conditions to pull them up and that the company had ample notice of this constitutes negligence on the part of the company. For some reason that I don't understand the company asserts the frequency of the occurrence as a defense. The fact that these cables fall over the side so easily, means to the court that something certainly could be done about it. It constitutes negligence,

and the cable when it's over creates a condition of unseaworthiness.

The district court concluded that Handley's injury arose from a condition which occurred frequently on I & M's barges as they traversed Kentucky waters. The fact that the injury occurred in another state was fortuitous; it could have happened in Kentucky as well because of a continuing unseaworthy condition.

### B.

■ In the final analysis our task is to determine whether the district court's exercise of jurisdiction in this case offended "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). If "minimum contacts" exist, assuming proper notice of the suit is given the defendant, due process is satisfied. In a case like the present one, where a federal court is sitting in a federal question case, the purpose of minimum contacts is to protect the defendant "against the burdens of litigating in a distant or inconvenient forum." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). The increase in commercial transactions which touch two or more states has caused a relaxation in the role of the Due Process Clause as a guarantor against inconvenient litigation. *Id.* at 292–93, 100 S.Ct. at 564–65. Nevertheless, a defendant's connection with the forum state should be such that "he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567.

■ We conclude that Handley's claim arose, at least indirectly from I & M's transacting business in Kentucky and that due process is not offended by permitting a district court sitting in Kentucky to exercise personal jurisdiction over I & M in this case. Where a nonresident corporation carries on substantial and more or less continuous business within a state it should reasonably expect to be required to defend actions in the courts of that state. A federal court should be able to compel a corporate defendant which has availed itself of the privilege of transacting business in the forum state to submit to its jurisdiction in cases brought pursuant to federal law. To hold otherwise would be to diminish the effectiveness of legislation having national scope. I & M could have sought a transfer of this action to a district court in West Virginia on grounds of *forum non conveniens*, 28 U.S.C. § 1404 (1976), which would have imposed a less rigorous burden upon it. Instead it sought dismissal on grounds of lack of personal jurisdiction, and we conclude that the district court decided this issue correctly.

The judgment of the district court is affirmed.

KRUPANSKY, Circuit Judge, dissenting.

Because the majority's interpretation of Federal Rule of Civil Procedure 4(e) effectively obviates the role, mandated by rule 4(e), of the Kentucky state long-arm statute in this case, I must respectfully dissent.

The majority recognizes that, "[i]t is clear ... that Rule 4, Fed.R.Civ.P., affects personal jurisdiction of district courts by placing territorial limits on their process" where, as here, Congress has neglected to promulgate statutory provisions for service of process concomitant with federally created substantive rights. As a consequence of Congressional inaction in this Jones Act cause, rule 4(e) directs that the federal court's personal jurisdiction be referenced to appropriate relevant forum state statutes. On its face, rule 4(e) offers no support for the majority's conclusion that "... a federal district court considering a case that arises under federal law is not subject to precisely the same due process limitations which restrict its reach in diversity cases". The majority ignores the direct command of rule 4(e) which specifically mandates that the federal court limit service of its process to the "circumstances" and "manner" prescribed by the forum state's long-arm statute by inappropriately framing the confronted issue here on ap-

peal as "... whether the district court's assertion of jurisdiction unfairly burdened I & M with the requirement of litigating in an inconvenient forum". In the case at bar, the relevant Kentucky long-arm statute limits service of process on non-residents to claims arising from the non-resident's transaction of business within its geographic boundaries.

Here the record evidences that the asserted cause of action accrued from the out cf state negligence of a non-Kentucky defendant which proximately caused injury outside of the state of Kentucky to a plaintiff who was not and never had been a resident of that state.

Accordingly, from the facts of this case, it is apparent that personal jurisdiction could not have been invoked pursuant to Kentucky's long-arm statute. I would therefore vacate the judgment of the court below and remand the case for dismissal for lack of personal jurisdiction.