In the Matter of McRAE FIRE PROTECTION, INC., Debtor.

McRAE FIRE PROTECTION, INC., a Michigan corporation, Plaintiff,

v.

JOSEPH DAVIS, INC., a New York corporation, Defendant.

JOSEPH DAVIS, INC., a New York corporation, Third-Party Plaintiff,

v.

WALT DISNEY WORLD COMPANY, a California corporation, United States Fidelity and Guaranty Company, a Maryland corporation, R.E. Dailey and Company, a Michigan corporation, Third-Party Defendants.

Bankruptcy No. 84–00875–G.
Adv. No. 84–0510–G.

United States Bankruptcy Court, E.D. Michigan, S.D.

May 6, 1985.

Mark F. Makower & Associates, P.C., Detroit, Mich., for debtor/plaintiff.

William F. Savino, Magavern & Magavern, Buffalo, N.Y., Chris Nilson, Detroit, Mich., for defendant/third-party plaintiff.

Lita H. Popke, Harvey, Kruse, Westen & Milan, P.C., Detroit, Mich., for Disney World.

David M. Hayes and Michael Khoury, Detroit, Mich., for USF & G.

AMENDED ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND THIRD–PARTY DEFENDANTS' MOTIONS FOR ABSTENTION

RAY REYNOLDS GRAVES, Bankruptcy Judge.

R.E. Dailey Company, (Dailey), a Michigan corporation, contracted with the Walt Disney World Company, a California corporation doing business in the State of Florida, to perform as the general contractor for the construction of the Communicore Pavillion at Epcot Center in the State of Florida. On July 16, 1981, Dailey, subcontracted part of the Communicore Pavillion contract to Joseph Davis, Inc., (JDI), a New York corporation. Dailey also entered into an agreement with the United States Fidelity & Guaranty Co. (USF & G), a Maryland corporation, to obtain a labor and material bond. The bond required USF & G to pay for material and labor used in the Epcot Project should Dailey default on its payment to its subcontractors.

JDI in turn signed three separate contracts with McRae Fire Protection Systems (McRae), a Michigan corporation, to perform work on the Communicore, Japan, and France Pavillions. Each agreement provided for final payment to be made by JDI to McRae six months after JDI had received final payment. The contract did not specify, however, from whom the payment to JDI was to come. JDI argues that the parties understood that final payment to McRae was contingent upon Dailey's payment to JDI.

To date, JDI has paid $677,613.63 to McRae; McRae now seeks the balance of $142,654.35, plus interest from March 31, 1983. The amount is substantially reduced by various back charges assessed by Dailey against JDI. Approximately $36,000 represents retainage, which has not been paid to McRae because it has not been received by JDI. $53,350 was back charged by Dailey against McRae for work performed by Dai-

ley on McRae's behalf. The entire $53,350 has been held by JDI from McRae. Another $40,000 has been withheld due to damages and back charges over and beyond those assessed by Dailey. JDI maintains that the balance of $12,000 arises out of nonpayment to McRae for extra work.

At the completion of the Dailey/Disney contract Disney made payment to Dailey, less back charges, which Dailey in turn back charged against JDI, and is now the focus of those proceedings. Six months after McRae finished its work, JDI had not received final payment from Dailey. Ultimately, McRae did not receive its final payment and defaulted on its payment to material suppliers and a loan with Manufacturers Bank of Detroit. On March 9, 1984, McRae filed for protection under Chapter 11 of the Bankruptcy Code.

On the date of filing, the JDI/McRae contract constituted 63% of McRae's current assets, and were sufficient to pay off 74% of its then existing total assets. The receivables from the contract are the largest asset belonging to McRae. It is of little wonder that on June 18, 1984 this adversary proceeding was commenced against JDI.

In its response JDI moved pursuant to 28 U.S.C. § 1471(d) for the Court to abstain. JDI argued the adversary proceeding concerned matters unique to Florida law that were involved in three law suits in the Florida courts. In a lengthy brief opposing the motion, McRae argued the Florida cases had not moved past discovery, that it was not involved in any way with the Florida litigation, and that traditional considerations warranting abstention did not apply. The most telling argument made by McRae were on pages 18 and 20 of its brief:

"[W]e submit that the equities involved on the part of McRae, combined with the *strong federal interest in orderly and expeditious administration of bankruptcy proceedings* as well as the case law authority dealing with the abstention doctrine, clearly dictate that this court

retain jurisdiction over this adversary proceeding." (Emphasis Added)

[W]here the outcome of a proceeding has a substantial and direct effect upon the estate of a debtor in a bankruptcy proceeding, a *particularly strong* showing is necessary in order to dictate abstention ... (Emphasis Added)

■ This Court agreed with McRae and on September 25, 1984 entered an order denying the motion to abstain; JDI then filed a third-party complaint against Disney, Dailey, and USF & G. Disney argues it lacks sufficient minimum contacts with the State of Michigan and moves to dismiss for lack of personal jurisdiction. Each of the third-party defendants argue the third-party claims are either unnecessary to resolve the main claim, or do not affect the claim, and now move pursuant to 28 U.S.C. § 1334(c)(1) for the Court to abstain. McRae, apparently reversing its earlier position, joins in support of the motion to abstain. For reasons set forth below, the motions for dismissal for lack of personal jurisdiction and abstention are DENIED.

In *Allard v. Benjamin*, 49 B.R. 900 (Bkrtcy.E.D.Mi.1985), this Court found issues of bankruptcy to be federal questions and unaffected by the minimum contacts test of *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, *Reh'g denied*, 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92 (1958), and their progeny. "When a federal statute creating a substantive right contains no process provisions, service of process in a district court over a nonresident defendant who is not found in the forum state is governed by the applicable statute or rule of that state under Rule 4(e) Fed.R. Civ.P.," *Handley v. Indiana & Michigan Electric Company*, 732 F.2d 1265, 1268 (6th Cir.1984). Bankruptcy Rule 7004(d) alleviates this concern by providing a nationwide service of process, and is similar to other specialized statutes. *See* e.g. 28 U.S.C. § 2361 (interpleader); 15 U.S.C. §§ 5, 22, 25 (Federal Anti-Trust). Jurisdic-

tion over a defendant in federal question cases is, therefore, founded on the contacts with "the United States as a whole" rather than the contacts with the forum state. *Id.* at 1268. *Citing Chrysler Corp., v. Fedders Corp.*, 643 F.2d 1229 (6th Cir.1981), *cert. denied*, 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981).

■ The Court must determine whether personal jurisdiction over a third-party defendant exists in an adversary proceeding arising under Title 11. Rule 14(a) of the Fed.Rule of Civ.Pro. permits a defending party as a third-party plaintiff to serve a complaint upon a person, not a party to the action, who is or may be liable to him for all or part of the plaintiff's claim. Rule 14(a) applies in adversary proceedings through Bankruptcy Rule 7014. Complaints filed in an adversary proceeding may be served anywhere in the United States. Bankruptcy Rule 7004(d). The rule applied in *Allard* is also appropriate to third-party defendants in adversary proceeding arising under or in Title 11. *Compare Handley, supra.; Terry v. Raymond International, Inc.*, 658 F.2d 398 (5th Cir. 1981) (State long-arm statute used to obtain personal jurisdiction in federal question cases). If the adversary proceeding can be independently sustained on the basis that it arises under the Constitution or laws of the United States, personal jurisdiction is determined by the defendant's contacts with the United States. *Handley, supra; Terry, supra.*

The arguments that the JDI/Dailey contract has no effect on the main claim, and that the third-party Defendants are unnecessary for the resolution of the claim are premised on the legal relationship of the parties. Dailey points to the language of the contract and argues that the omission of any specific reference to a final payment from Dailey to JDI as a condition precedent to payment of McRae, fails to establish a relationship between McRae and Dailey. JDI, however, maintains that review of the back charges and work orders during the course of the project reveal McRae not only performed at Dailey's direction, but also

that the back charges against JDI by Dailey for work that was not performed by McRae indicates the extent and nature of the relationship between the parties.

 The third-party complaint filed by JDI seeks to join the third-party Defendants pursuant to Fed.Rules Civ.Pro. 14(a). The allegations of the third-party complaint are to be liberally construed and need not show that recovery is a certainty; "the complaint should be allowed to stand, if under some construction of the facts which might be adduced at trial, recovery would be possible." 3 Moore's Fed.Prac. ¶ 14.10 (1985). It is unnecessary for the third-party plaintiff to assert all liability against the defendants, he may assert either all or part of the liability against the third-party defendants. Nonetheless, Defendants urge the Court to adopt an outcome determinative test, *United States v. Joe Grasso & Sons, Inc., et al.*, 380 F.2d 749 (5th Cir. 1967), *In re H & S Transportation Company, Inc.*, 35 B.R. 67 (Bkrtcy.M.D.Tenn. 1983), *Matter of Joyanna Holitogs, Inc.*, 21 B.R. 323 (Bkrtcy.S.D.N.Y.1982), and dismiss the third-party complaints.

 Section 1334(c)(1) permits the Court, in its discretion to abstain in the interest of justice, or in the interest of comity with the State courts, or respect for State law. In bankruptcy proceedings a motion for discretionary abstention based on the effect of joinder of third-party defendants on the main claim is measured by the impact the third-party claim has on a debtor's estate. In *Baker v. Highland* and *Pustelak v. VanDenberghe*, Nos. 84–1067 and 84–1068, slip op. (Bkrtcy.E.D.Mi. January 16, 1985), this Court, mindful of the Supreme Court decisions subsequent to *Northern Pipeline* found "[that the United States Supreme Court had] begun to make vividly clear: [that] the congressional authority to aid in the reorganization of troubled debtors is of such vital importance that other interests, including those which may otherwise be rights created by state law, and interests of the federal government must give way to the aim of the Congress." *Baker*, at

——, citing *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), *In re Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). *See also In re Kovacs*, —— U.S. ——, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985).

*Baker* found matters which were inextricably tied to traditional bankruptcy proceedings and demonstrated to have an effect on the debtor-creditor relationship or the liquidation of assets to be core proceedings under 28 U.S.C. § 157(b)(2)(O). Subsequently, *NLT Computer Services Corp. v. Capitol Computer Systems, Inc., et al.*, 755 F.2d 1253 (6th Cir.1985), found that despite the constitutional defect contained in the 1978 Bankruptcy Reform Act, the Courts have been vitally interested in upholding in other respects Congress's objectives in passing the bankruptcy reform law. *Id.* at 1262. The adoption of the interim rule by the courts of appeals was further evidence of the "court's desire to accord as much meaning as practically possible to the intent of Congress." *Id.*

*Allard* adopted *NLT Computer* and extended *Baker* by emphasizing a functional bankruptcy system consistent with recent court decisions and the aim of Congress to place all matters demonstrated to affect bankruptcy proceedings in one forum. *Allard* found claimed breaches of fiduciary duties by officers of the Debtor corporation just prior to the filing of bankruptcy to have possible effects on the estate to the detriment of its creditors and to the estate. The breach of fiduciary duty issues, *inter alia*, arose from the same facts as the traditional bankruptcy matters. The number of defendants, the complexity of the transactions, the demonstrated effect on the estate, coupled with the congressional intentions warranted adjudication of all proceedings by this Court.

Although *Allard* and *Baker* were 1984 Amendment cases, the language of § 157(b)(2)(O) is similar to the prevailing test under the 1978 Act.

The usual articulation of the tests for determining whether a civil proceeding is

related to a bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* e.g., *In re Hall,* 30 B.R. [799], 802 (Bkrtcy.M.D.Tenn.1983); *In re General Distributors, Inc.,* 21 B.R. 888, 892 n. 13 (Bankr.E.D.N.Y.1982); *In re U.S. Air Duct Corp.,* 8 B.R. 848, 851 (Bankr.N.D. N.Y.1981); 1 Collier on Bankruptcy ¶ 3.01 at 3–49. Thus the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts on the handling and administration of the bankrupt estate.

*Pacor Inc., v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984).

■ It is against the backdrop of legislative intent which we consider the motions to abstain based on the third-party Defendants being "necessary" and affecting the main claim. The effect of the third-party claim is revealed by examination of the facts presented here. McRae indicated in its brief in opposition to JDI's initial motion to abstain that the accounts receivable from JDI represented 63% of its total assets; and that Dailey's failure to pay McRae has resulted in McRae's inability to pay its workers, or the loan to Manufacturers Bank, resulting in this petition in bankruptcy. If the JDI claim for full or partial reimbursement against Dailey is dismissed payment to McRae is affected directly. A finding of no liability against Dailey releases USF & G from any obligation to JDI and forecloses McRae's ability to recover from JDI. If, on the other hand, Dailey is liable for all or part of payment owed to McRae, USF & G is obligated to pay consistent with the terms of the bond and a major asset of the Debtor is returned to the estate. Disney was the benefactor of the JDI/McRae contract. JDI's action against Disney is based on unjust enrichment. To the extent shown, any damage award passes to McRae. Based on the above, we find the third-party action has an effect on the estate and the parties are "necessary" to a full, proper reorganization of the Debtor.

■ Alternatively, abstention is urged due to the pendency of litigation in the Florida courts involving JDI, Dailey, USF & G, and Disney. "By itself, the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction ...." *MicroSoftware Computer Systems v. Ontel Corp.,* 686 F.2d 531, 537 (7th Cir.1982). Many factors are to be considered in deciding whether to abstain from jurisdiction, *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), no one factor is determinative of the whole, *Micro Software Computer Systems,* 686 F.2d at 537. The presence of a state pending action is but one factor supporting abstention. *Duncan v. Poythress,* 657 F.2d 691, 697 (5th Cir.1981); *Compare Merrill Lynch, Pierce, Fenner & Smith Inc. v. Haydu,* 675 F.2d 1169 (11th Cir. 1982). The doctrine of abstention does not mean "a blind deference to 'States Rights' ...." It does represent a system where the "sensitivity to the legitimate interest of both State and National Government" are to be taken into account. *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). "Where a state law cause of action has been commenced in a state court between private parties, the state action is an insufficient basis for dismissal". *Strode Publishers, Inc. v. Holtz,* 665 F.2d 333, 335 (11th Cir.1982).

In *Crawley v. Hamilton County Commissioners,* 744 F.2d 28 (6th Cir.1984), the Court adopted the *Colorado River* holding as clarified in *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), and found in weighing the factors they must be balanced heavily in favor of the exercise of jurisdiction. "Other factors may also be considered, particularly the progress that has been made in each of the two actions." *Id.* at 31.

The answers to interrogatories reveal the status of the Florida proceedings remain essentially unchanged from September 13, 1984, when McRae filed its response to JDI's motion to abstain. The briefs recite, and rely on, the pendency of the state litigation which we find, standing alone does not counterbalance the equities in favor of this Court's exercise of jurisdiction. Further, we do not find the issues to be any more complex than those litigated in countless other proceedings that have come before this Court. As McRae has argued, the strong federal interest in the reorganization of the Debtors require a particularly strong showing that abstention is necessary. McRae's objections notwithstanding, the motions for abstention should be, and herein are, DENIED.