**James R. BOONE, Plaintiff,**

v.

**SULPHUR CREEK RESORT, INC., Defendant.**

**No. IP 89–980–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Oct. 16, 1990.

Irma Hampton Nave, Anderson, Ind., for plaintiff.

Penny Travelsted, Hixson, Downey & Travelsted, Bowling Green, Ky., Richard C. Kraege, Goodin & Kraege, Indianapolis, Ind., for defendant.

## ENTRY DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND DENYING DEFENDANT'S MOTION FOR CHANGE OF VENUE

TINDER, District Judge.

This matter came before the court on the Defendant's Request for an Evidentiary Hearing. On September 28, 1990, this court heard evidence from both parties bearing on the twin issues of whether this court has subject matter jurisdiction over Defendant and whether this case should be transferred to the United States District Court for the Western District of Kentucky on the ground of forum non conveniens. After a review of the applicable law and the evidence presented at the hearing, including affidavits submitted by the parties, this court rules that it does have subject matter jurisdiction over the Defendant, Sulphur Creek Resort, Inc. and, therefore, DENIES Defendant's motion to dismiss this action. In addition, Defendant's motion for a change of venue is also DENIED.

I. *Factual Background*

Plaintiff James R. Boone's cause of action is in negligence. Mr. Boone alleged in his complaint that he was injured on September 3, 1988, as the result of a fall sustained on property of Sulphur Creek Resort, Inc. ("the Resort") while a business guest at the Resort. The Resort is a Kentucky corporation with its principal place of business in Kettle, a town in south central Kentucky on the shores of Dale Hollow Lake and not far from the Tennessee border.

In order for Mr. Boone to establish that this court, some 250 miles from Dale Hollow Lake and the scene of Plaintiff's fall, would be an appropriate forum to hear his case it was incumbent upon the Plaintiff to produce evidence of the Resort's "contacts" with the State of Indiana. Therefore, this court was obliged to hear, and will now recount (in abbreviated fashion), a history of the Defendant's contacts with Indiana.

Plaintiff's evidence has shown that Mr. and Mrs. Michael Humphrey, husband and wife and the sole officers of Sulphur Creek Resort, Inc., operate the Resort as a commercial enterprise designed to attract campers, boaters, vacationers and others who seek to enjoy the great outdoors while staying in "very nice facilities at a reasonable price."[1] Such an inviting formula is not designed to keep people at home, and Mr. Humphrey has testified that people do come to Sulphur Creek Resort and that they come in not insignificant numbers from the Hoosier State.[2]

Even adventurous outdoorsmen and nature lovers, in this day and age, will sometimes refuse to journey forth from their homes absent knowledge of where they are headed and where they will stay. Not surprisingly, therefore, Plaintiff has been able to demonstrate that Defendant advertises in order to attract business to its location. The evidence has shown that a portion of this advertising is directed at Indiana residents.

Mr. Humphrey testified that Indiana and Ohio audiences were a primary target of the Resort's advertising appeals and related that he views Interstate 75 from Cincinnati and Interstate 65 from Indianapolis as "pipelines" which funnel prospective customers to the Resort's location. One method used by Mr. Humphrey to keep Indiana customers flowing down the pipeline has been the use of direct mail appeals to potential customers.

Unlike some businessmen who might flood an area with direct mail advertising never having established previous contact with his target audience, Mr. Humphrey testified that he is more focused in his approach to mailings. Mr. Humphrey mails at least one hundred pieces of mail to Indiana residents each year, but he only mails to individuals who have requested information or have stayed at the Resort itself. Thus, each mailing the Resort makes to an Indiana resident is the result of a purposeful relationship created and cultivated by systematic communication and contact. Mr. Humphrey's testimony revealed that every mailing the Resort makes to an Indiana resident is more than an isolated use of the mails; it is a link in an ongoing relationship between the Resort and the person who receives the correspondence.

In addition to mailings, the Resort's rather sophisticated advertising program has, over the past five years, included multi-colored brochures, posters, magazine advertisements and attendance at trade shows where outdoor and boating enthusiasts are expected to congregate. Mr. Humphrey monitors the Resort's diverse advertising program with an eye toward what will attract the most customers to his location, and has shown a willingness to terminate a method of advertising that does not attract a sufficient volume of customers to the Resort. Mr. Humphrey testified that he

---

1. Source: Sulphur Creek Resort's 1990 Rate Guide.

2. Mr. Humphrey testified that as many as one third of his customers come from Indiana, though he did not testify that he kept records of the domiciles of guests who have stayed at the Resort.

stopped advertising in several magazines distributed within the Indiana region when they proved ineffective in attracting customers.

Apparently, the Indianapolis Boat Show is an effective means of advertising for the Resort because Mr. Humphrey has attended that trade show annually since 1978. At the Boat Show Mr. Humphrey and his wife operate a booth from which they distribute literature about the Resort and solicit prospective customers to make the drive down to their southern Kentucky location. One aspect of this booth has been a poster which extols the Resort as the closest of its type to Indiana. Literature distributed to passersby makes the point that the Resort is "Within Gas Tank Drive of Indiana and Ohio (250 Miles from Indy & Cincinnati Areas)".[3] It is, therefore, apparent that the Humphreys attend the boat show in order to inform Indiana residents about the Resort with the goal of engaging in a business relationship with prospective Indiana customers.[4]

The Humphreys' attendance at the Boat Show also gives them the opportunity to make reservations for and take deposits from customers who stop by their booth.[5] Indeed, it is Mr. Boone's sworn statement that he made reservations with Defendant and made a deposit on his account at the Boat Show. Defendant's practice of transacting business with Indiana residents at the Indianapolis Boat Show was confirmed by two additional witnesses at the evidentiary hearing.

## II. *Jurisdiction*

An analysis of whether a federal district court may exercise personal jurisdiction over a defendant pursuant to the forum state's long arm statute typically requires a two step approach involving an analysis of both whether the statute may be applied to require the defendant to defend in the forum and whether under the circumstances of that case, requiring the defendant to defend in the forum is consistent with due process. This analysis has been simplified in Indiana, however, because the Indiana long arm statute, Indiana Rule of Trial Procedure 4.4(A), has been interpreted to accord jurisdiction to the full limits of due process. *See Oddi v. Mariner–Denver, Inc.*, 461 F.Supp. 306, 308 (S.D.Ind. 1978); *Dura–Line Corp. v. Sloan*, 487 N.E.2d 469, 470 (Ind.App.1986). Thus, in determining whether this court has personal jurisdiction over the Resort, this court's inquiry is limited to whether Due Process permits this court to exercise jurisdiction.

The essential inquiry in modern personal jurisdiction analysis was summarized over forty years ago by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In *International Shoe* the Court recognized that:

> due process requires only that in order to subject a defendant to a judgment in personam ... he have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*Id.* at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). In order to identify the "contacts" a corporation has with the forum state the *International Shoe* Court further observed that the relevant inquiry was into the "activities carried on in [the corporation's] behalf by those who are authorized to act for it." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158.

■ In this case the only defendant is a corporate defendant, the Resort, therefore,

---

**3.** The evidence at the hearing also showed that similar brochures were mailed to Indiana residents including plaintiff.

**4.** Another motivation for Mr. Humphrey's consistent attendance at the Indianapolis Boat Show may be the close proximity of family members with whom the Humphreys stay when in Indianapolis. In this regard, Mr. Humphrey testified that his ability to stay with family members while in Indianapolis reduces the cost of his visits to this City.

**5.** The evidence has shown that the Resort enters into contractual relationships with Indiana residents whereby prospective guests make a down payment and sign a written agreement to use the Resort.

the acts of its two officers, Mr. and Mrs. Humphrey, which have been undertaken in a purely individual capacity, are irrelevant to an analysis of the jurisdiction this court may exercise over the corporate entity. The Plaintiff, in presenting his proof, however, has not relied upon any purely individual activities and this court finds that the acts of Mr. and Mrs. Humphrey which are described in this opinion were all corporate acts carried out with the purpose of benefitting the Resort.

The *International Shoe* case is viewed as setting forth two independent analytical frameworks to be used to determine whether a defendant has sufficient minimum contacts with a forum to permit the exercise of personal jurisdiction over that defendant. Those analytical frameworks have been termed the doctrines of general and specific jurisdiction.

■ A court may exercise general jurisdiction over a corporate defendant in "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *International Shoe*, 326 U.S. at 318, 66 S.Ct. at 159. An exercise of specific jurisdiction, however, is appropriate only where the obligation sued upon "arise[s] out of or [is] connected with the activities [of the corporation] within the state." *Id.* at 319, 66 S.Ct. at 159.

Since *International Shoe*, that case's due process precepts have been much expounded upon but little changed. Courts continue to speak in terms of "minimum contacts" and general and specific jurisdiction, recognizing all the while that the fact intensive nature of the jurisdictional inquiry means that doctrinal statements can only serve as guideposts for the resolution of specific cases. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485, 105 S.Ct. 2174, 2189, 85 L.Ed.2d 528 (1985) ("reject[ing] any talismanic jurisdictional formulas"). In the end " 'the facts of each

case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.' " *Id.* at 485, 105 S.Ct. at 2189 (quoting *Kulko v. California Superior Court*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978)), *accord Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1213 (7th Cir.1984) ("[the] sufficiency of minimum contacts cannot be determined by any set formula or rule of thumb, but 'must rest on a consideration of what is fair and reasonable in the circumstances of each particular case.' " (citation omitted)).

■ After weighing the facts in this case, this court concludes that the Resort's contact with Indiana and Indiana residents have been "continuous and systematic" in the manner required to give this court general jurisdiction over the Resort.[6] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). Of primary importance to this conclusion is the evidence that the Resort made the residents of Indiana and Ohio specific targets of the Resort's advertising and that the Resort carried out certain aspects of its advertising in a highly personalized way which involved correspondence with Indiana residents as a follow up to face to face meetings. Mr. Humphrey, the President of the Resort, views Interstate 65 between Indiana and the Resort as a "pipeline" bringing business to the Resort and his efforts to keep that pipeline flowing have, in addition to mailings, involved regular trips to the State where he and other representatives of the Resort personally solicited Indiana residents to come to the Resort.

The contacts between the Resort and Indiana involve precisely the type of contacts the Supreme Court has emphasized are analytically significant. In *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) the Supreme Court declined to find that a federal district court in Oklahoma had personal jurisdiction over a New York

---

**6.** Because this court holds that it has general jurisdiction over the Resort, there is no reason to reach the question of whether an exercise of

the court's specific jurisdiction would be appropriate.

car salesman where the car dealer's "only connection with Oklahoma [was] the fact that an automobile sold in New York [by the dealer] to New York residents became involved in an accident in Oklahoma." *Id.* at 287, 100 S.Ct. at 562. Central to the Court's reasoning was the fact that it found no circumstances tying the defendant to Oklahoma. The relevant considerations emphasized by the *World–Wide Volkswagen* Court included the facts that:

> [Defendants] carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market.

*Id.* at 295, 100 S.Ct. at 566.

In contrast, the evidence has shown that the Resort carries on substantial business in Indiana. Reservations have been made and deposits taken while representatives of the Resort have been on business trips to the State. During their trips to the State Resort representatives have benefitted from Indiana law and solicited business here. The Resort regularly advertises in Indiana and Indiana residents make up a significant percentage of the Resort's customer base. The Resort unquestionably seeks to serve the Indiana tourist and outdoor enthusiast market. Taken as a whole, the acts of the corporate defendant in this case lead this court to conclude that the Resort has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," *id.* at 297, 100 S.Ct. at 567 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d

1283 (1958)) and that, the Resort, therefore, could "reasonably anticipate being haled into court [here]." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.[7]

■ "Once it has been decided that a defendant purposefully established minimum contacts with the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 (citation omitted). This court concludes that an analysis of such "other factors" as the Defendant has brought to this court's attention do not divest this court of the authority to exercise jurisdiction over the Defendant.

Contrary to the Defendant's protestations, this court finds that the burden on Defendant to defend in this forum is not substantial. Representatives of the Defendant regularly travel to Indiana and, assuming Defendant's brochures are accurate, it's only a "gas tank drive" away. The Defendant's substantial voluntary contact with this forum simply undercuts the Resort's argument that requiring it to litigate here would be unreasonable. *See Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183 ("because 'modern transportation and communications have made it much less burdensome for a party to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.") (quoting *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)).

Frequent direct contact between representatives of the Resort and Indiana residents and Mr. Humphrey's promotional trips to Indiana distinguish this case from

**7.** In *Burger King* the Court explained "[j]urisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State . . . Thus where the defendant 'deliberately' has engaged in significant activities within a State . . . or has created 'continuing obligations' between himself and the residents of the forum . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." 471 U.S. at 476, 105 S.Ct. at 2184 (citations omitted) (emphasis in original).

*Szakacs v. Anheuser–Busch Companies, Inc.,* 644 F.Supp. 1121 (N.D.Ind.1986) which was heavily relied upon by Defendant's counsel in his presentation to this court. In the *Szakacs* case, which involved a tort claim arising out of an Indiana resident's trip to Busch Gardens in Florida, the court declined to find that it had personal jurisdiction over the Florida defendant (Busch Gardens) based solely on Busch's national advertising campaign. The court expressly found that the plaintiffs had made "no reservations or contacts ... with Busch Gardens prior to the vacation trip" and that there was no "personal contact with the plaintiff in the forum state." *Id.* at 1122, 1125. The sole basis of jurisdiction that was urged by the *Szakacs* plaintiff was Busch Gardens' national advertising campaign. The *Szakacs* case is, therefore, not persuasive authority in this case where the contacts between the Defendant and the forum go beyond a mere regional or national advertising campaign.

Defendant's argument that the State of Kentucky has the greatest interest in the subject matter of this law suit is also unavailing. The United States Supreme Court has recognized that every state has a "'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182. In addition, Indiana, like all states, has a significant interest in regulating the conduct of out-of-state actors who intentionally direct their advertising and promotional pleas to Indiana residents.

Furthermore, the fact that the plaintiff resides in this District and was given medical treatment here for the injuries upon which he is suing makes this District a reasonable location for the plaintiff to bring his cause of action. The Defendant has not shown undue hardship that would result from defending in Indiana or that resolution of this case in Indiana courts would affect a significant state policy of Kentucky. On these facts this court will not permit the Defendant to wield the Due Process Clause "as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183.[8]

### III. *Change of Venue*

■ Defendant has also moved for a change of venue under 28 U.S.C. § 1404(a) which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Under this provision, the burden is on the moving party to persuade the court that the cause should be transferred. *See Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978) *cert. denied, Pro Arts, Inc. v. Factors Etc., Inc.,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); 15 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE and PROCEDURE § 3848 at 383 (2d ed. 1986).

---

**8.** Had this court concluded that it lacked personal jurisdiction over the Resort it still would not have been compelled to dismiss this action. Defendant's pretrial briefing and affidavit on the jurisdictional issue claimed that the Resort's "*only* contact with the State of Indiana is that once a year Michael Humphrey, the President of Sulphur Creek, attends a boat show in Indianapolis, Indiana." (emphasis added). In light of the evidence presented by plaintiff this claim rings hollow indeed. Mr. Humphrey admitted at the evidentiary hearing that the Resort has regularly sent mailings, including bulk mailings of at least 100 pieces, to Indiana residents. Mr. Humphrey also admitted that he maintained contact by mail with a significant number of Indiana customers and that his advertising was directed toward attracting Indiana residents to his Resort on Dale Hollow Lake. These admissions flatly contradict Defendant's brief and Mr. Humphrey's own affidavit, both of which have stood uncorrected since filed some ten months ago.

In a recent case in this jurisdiction, the motion of a defendant who had moved for dismissal for lack of personal jurisdiction was denied as a sanction for filing an affidavit that was "untrue or blatantly misleading." *Curtis Mgt. Group v. Academy of Motion Picture Arts,* 717 F.Supp. 1362, 1373 (S.D.Ind.1989). Given the discrepancy between Defendant's affidavit and the facts brought out at the hearing, such a sanction, denying Defendant's motion to dismiss, might have been appropriate on the facts of this case.

The evidence Defendant presented on this question, however, was almost nonexistent.

Defendant has asserted that it would be expensive to procure the attendance of witnesses living in Kentucky, however, except for Mr. Humphrey, the Defendant gave no indication of who and how many witnesses it intends to call at trial. Without a more precise showing of what Defendant will prove and how it expects to prove it, a defendant cannot hope to carry its burden of establishing that its witness would be significantly inconvenienced by a trial in this forum. *See Factors Etc.*, 579 F.2d at 218 ("When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover"). With respect to Mr. Humphrey, he testified that it is his customary practice to stay with relatives and thereby reduce his expenses when in Indianapolis. In addition, Mr. Humphrey has identified no unusual difficulty associated with his somewhat regular travels to Indianapolis, therefore, this court concludes that he would not be unduly inconvenienced by being required to attend trial in Indianapolis.

Defendant also contends that "[i]f venue remains in Indiana a view of the premises is precluded." While this may be so, a view of the premises is precluded in most cases. Defendant has made no showing why photographs, models and/or eye-witness testimony will not adequately describe the scene for the jury.

In contrast to Defendant's presentation at the hearing, plaintiff introduced evidence that he was medically treated for his injuries in this district and that witnesses to his medical treatment and recovery reside here. Plaintiff also introduced evidence that individuals with him at the time of his accident reside in this district. On balance, this court finds that plaintiff has made the stronger showing on the issue of convenience.

Defendant's final concern is that the law of the State of Kentucky should be applied to its case. Whether Kentucky law is to be applied or not, this determination will not override the other considerations relevant to the transfer issue all of which have been decided against Defendant. *See* 15 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE and PROCEDURE § 3854 at 466–67. This court is often called upon to apply the law of different jurisdictions on issues more complex than negligence. Defendant's motion for a change of venue is DENIED.

ALL OF WHICH IS ORDERED.