**L.H. CARBIDE CORPORATION,**
Plaintiff,

v.

**The PIECE MAKER COMPANY,**
Defendant.

Cause No. 1:93–CV–312.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

May 18, 1994.

Douglas D. Powers, Anthony Niewyk, Albert J. Dahm, Baker and Daniels, Fort Wayne, IN, for plaintiff.

Edward L. Murphy, Jr., Miller Carson Boxberger and Murphy, Fort Wayne, IN, Owen E. Perry, Reising, Ethington, Barnard, Perry and Milton, Troy, MI, for defendant

### ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on Defendant's Motion to Dismiss or Transfer filed on February 4, 1994. In support of its Motion, defendant also filed a Brief In Support and the Affidavit of Mr. Patrick A. Smith, President of The Piece Maker Company. Plaintiff filed its Response on April 1, 1994, with various affidavits and exhibits. On April 13, 1994, defendant filed its Reply. Thus, the court finding the matter fully briefed, denies defendant's Motion to Dismiss, but grants defendant's Motion to Transfer.

### Background

Plaintiff, L.H. Carbide Corporation (hereinafter: "Carbide"), is an Indiana Corporation with its principal place of business in Fort Wayne, Indiana. Defendant, The Piece Maker Company (hereinafter: "Piece Maker"), is a Michigan Corporation with its principal place of business in Troy, Michigan. Among other things, Carbide designs and manufactures dies for use in stamping, stacking and assembling laminations for forming rotor and stator cores which are used in electrical motors. Carbide also designs and manufactures other equipment that is used in conjunction with these dies in the manufacturing process. Piece Maker, who is a competitor of Carbide, manufactures and reconstructs dies for use in manufacturing rotor and stator cores for electrical motors.

Carbide is the owner of the following patents which concern this cause of action:

1. United States Patent No. 4,619,028, (the '028 Patent) entitled "Apparatus for Manufacture of Laminated Parts";

2. United States Patent No. 4,738,020, (the '020 Patent) entitled "Method for Manufacture of Laminated Parts";

3. United States Patent No. 5,087,849, (the '849 Patent) entitled "Laminated Parts and a Method for Manufacture Thereof"; and

4. United States Patent No. 5,123,155, (the '155 Patent) entitled "Apparatus and Method for Manufacturing Laminated Parts".

Carbide refers to these patents as the "Interlock Patents" because the patents relate to technology that automatically creates lamination stacks made from sheet stock material to form rotor and stator cores for electric motors.

Carbide instituted the present action by filing its Complaint with this court on November 24, 1993, alleging patent infringement. Carbide alleges that Piece Maker is actively inducing its customers to infringe upon the Interlock Patents owned by Carbide. Carbide further alleges that Piece Maker is manufacturing and selling dies to customers that contributorily infringe upon the Interlock Patents.

### Discussion

Defendant filed its Motion to Dismiss or Transfer pursuant to Fed.R.Civ.P. 12(b)(2) and (3) on the ground that this court lacks personal jurisdiction over Piece Maker and that venue, consequently, in this district is improper. In the alternative, Piece Maker requests this court to transfer this cause of action to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1404 and § 1406.

■ When the issue of personal jurisdiction is raised via a motion to dismiss, Fed. R.Civ.P. 12(b)(2), the burden of proof rests upon the party asserting jurisdiction. *Wessel Co., Inc. v. Yoffe & Beitman Mgmt. Corp.,* 457 F.Supp. 939, 940 (N.D.Ill.1978). This burden of proof is met by a prima facie showing that jurisdiction is conferred by the long-arm statute. *Neiman v. Rudolph Wolff & Co., Ltd.,* 619 F.2d 1189, 1190 (7th Cir.), *cert. denied,* 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980); *O'Hare Int'l Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir.1971); *Wessel Co., Inc.,* 457 F.Supp. at 940. In considering a challenge to personal jurisdiction, a court may receive and weigh affidavits, exhibits or other evidence submitted by the parties, *Nelson by Carson v. Park Industries, Inc.,* 717 F.2d 1120 (7th Cir.), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1983), but must construe all facts concerning jurisdiction in favor of the non-movant, including disputed or contested facts. *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1215 (7th Cir.1984); *Neiman,* 619 F.2d at 1190; *United States Railway Equipment Co. v. Port Huron & Detroit Railroad Co.,* 495 F.2d 1127, 1128 (7th Cir.1974); *O'Hare Int'l Bank,* 437 F.2d at 1176; *Maurice Sternberg, Inc. v. James,* 577 F.Supp. 882, 885 (N.D.Ill.1984).

### Personal Jurisdiction

■ Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied. *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). "[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444–45, 66 S.Ct. 242, 245–46, 90 L.Ed. 185 (1946). Thus, before a federal court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. *Omni,* 484 U.S. at 104, 108 S.Ct. at 409. There must be a basis for the defendant's amenability to service of summons. *Id.* This means there must be authorization for service of summons on the defendant. *Id.*

■ Although patent infringement cases are grounded in federal law and thus present federal questions, Congress has not enacted a statute governing personal jurisdiction in such cases. *Gor–Vue Corp. v. Hornell Elektrooptik AB,* 634 F.Supp. 535, 536 (N.D.Ohio 1986). Thus, there is no federal statute authorizing service of summons for patent infringement cases. Therefore, a federal court must look to the law of the state in which the federal court sits to determine whether jurisdiction may be asserted over an out-of-state defendant. *Id.*

Service of summons in a federal action is covered generally by Rule 4 of the Federal Rules of Civil Procedure. *Omni,* 484 U.S. at 104, 108 S.Ct. at 409. Rule 4 authorizes service of summons over an out-of-state defendant according to the law of the state where the federal district court sits or where service of summons is to be effected.[1]

---

1. Fed.R.Civ.P. 4 as amended April 22, 1993 and effective December 1, 1993, states in relevant part:

Ultimately, amenability to extra-territorial personal jurisdiction (service of summons) is a question of due process. *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1143 (1975). The basic tenet of the due process analysis was announced by the Supreme Court of the United States almost fifty years ago where it stated, "[a defendant] must have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

Judge Tinder of the Southern District of Indiana stated:

> Since *International Shoe,* that case's due process precepts have been much expounded upon but little changed. Court's continue to speak in terms of "minimum contacts" and general and specific jurisdiction, recognizing all the while that the fact intensive nature of the jurisdictional inquiry means that doctrinal statements can only serve as guideposts for the resolution of specific cases.

*Boone v. Sulphur Creek Resort, Inc.,* 749 F.Supp. 195, 199 (S.D.Ind.1990).

Moreover, in the context of federal-question litigation, such as patent infringement, where Congress has provided no federal statutory grant for the exercise of personal jurisdiction over a defendant, and the federal court must look to state law for the authority to exercise personal jurisdiction, there is some question as to whether the court is to be guided by the due process clause of the Fifth Amendment or whether the due process clause of the Fourteenth Amendment, and consequentially, the territorial limitations placed on the states by the Fourteenth Amendment apply.

In *Handley v. Indiana & Michigan Elec. Co.,* 732 F.2d 1265 (6th Cir.1984), the Sixth Circuit Court of Appeals recognized the difficulties in utilizing a state's long-arm statute to effectuate service of summons over a defendant in a case concerning a federally created cause of action, the Jones Act, 46 U.S.C. App. § 688. The court stated that where a federal district court seeks to assert personal jurisdiction over a non-resident defendant of the forum state in relation to a federally created cause of action, a different due process inquiry must be made rather than the standard due process inquiry undertaken pursuant to the Fourteenth Amendment in diversity cases. *Id.* at 1268. "As part of a national system of courts a federal district court considering a case that arises under federal law is not subject to precisely the same due process limitations which restrict its reach in diversity cases. It is clear, however, that Rule 4, Fed.R.Civ.P., affects personal jurisdiction of district courts by placing territorial limits on their process." *Id.*

The court then analyzed the district court's utilization of Kentucky's long-arm statute in light of the due process clause of the Fifth Amendment. *Id.* at 1271. First, the court held that the due process clause of the Fourteenth Amendment in relation to the "minimum contacts" test announced in *International Shoe* served two distinct functions. One (1), to protect a defendant from burdensome litigation in a distant or inconvenient

---

(e) Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:

(1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; ...

(h) Unless otherwise provided by federal law, service upon a domestic or foreign corporation or upon a partnership or other unincorporated association that is subject to suit under a common name, and from which a waiver of service has not been obtained and filed, shall be effected:

(1) in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1)...

(k)(1) Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant

(A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located, or ...

(k)(2) If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

forum, and two (2), to ensure that State courts do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system. *Id.* The court observed that the second rationale was not present in a case involving a federal question, and thus, limited its due process analysis under the Fifth Amendment to whether the defendant was unfairly burdened with the requirement of litigating in an inconvenient forum. *Id.*

In an admiralty case involving a non-resident of the United States, a Liberian corporation, the Seventh Circuit Court of Appeals implicitly endorsed this due process analysis in regard to the use of a state's long-arm statute to assert personal jurisdiction over a non-resident of the forum state when a federal question supplies the basis of subject-matter jurisdiction. *United Rope Distributors v. Seatriumph Marine*, 930 F.2d 532 (1991). Although the precise question presented to the Sixth Circuit in *Handley* was not squarely presented to the Seventh Circuit, in a lengthy discussion concerning the district court's authority to assert personal jurisdiction over a non-resident through Wisconsin's long-arm statute and Fed.R.Civ.P. 4, Judge Easterbrook indicated that the court was sympathetic to analysis of the Sixth Circuit.

Judge Easterbrook stated that a federal district court should not be kept from asserting personal jurisdiction over a non-resident defendant in regard to a federal claim because of the inadequacies of a state's long-arm statute. *Seatriumph*, 930 F.2d 534–36. When a federal district court is presented with a federal question, the court is not implementing any sort of state policy as in the usual diversity case where one of the goals of the federal court is to safeguard the citizens of the forum state. *Id.* at 534. Rather, the court is implementing national policy and minimum contacts with the United States, not just the forum state, is the determinative factor. *Id.*

In *Omni*, 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987), the United States Supreme Court implicitly rejected the due process analysis undertaken by the Sixth Circuit in *Handley*. In *Omni*, the Court held that the district court in Louisiana could not assert personal jurisdiction over two non-resident defendants, a British corporation and a resident and citizen of the United Kingdom. The cause of action was based upon federal substantive law, the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* (CEA), and personal jurisdiction was asserted under the long-arm statute of Louisiana. However, the terms of the state's long-arm statute had not been met and personal jurisdiction was found lacking.

First, the Court found that Congress did not implicitly authorize national service of process in a private cause of action under the CEA. Second, the Court did not disturb the district court's finding that the terms of the Louisiana long-arm statute had not been met, and therefore, Fed.R.Civ.P. 4 did not authorize service of summons pursuant to the State's long-arm statute. Finally, the Court held that it would not fashion a body of federal common law allowing for service of summons for federal-question causes of action where Congress failed to provide a statutory guide for such service. Indeed, the court stated:

> A narrowly tailored service of process provision, authorizing service on an alien in a federal-question case when the alien is not amenable to service under the applicable long-arm statute, might well serve the ends of the CEA and other federal statutes. It is not for the federal courts, however, to create such a rule as a matter of common law. That responsibility, in our view, better rests with those who propose the Federal Rules Of Civil Procedure and with Congress.

*Omni*, 484 U.S. at 111, 108 S.Ct. at 413.

Thus, in *Omni*, the Supreme Court was well aware of the anomaly of having federal courts rely upon state long-arm statutes that may not confer personal jurisdiction upon a non-resident of the forum state even where the cause of action is based upon federal substantive law, and where the state has no readily apparent interest in the litigation. *Omni* was announced in 1987, and Congress has since chosen not to create a personal jurisdiction statute authorizing nationwide service of summons for patent infringement cases.

However, in response to *Omni* and other cases where a federal district court was found to lack personal jurisdiction over a non-resident of the United States because the forum state's long-arm statute did not reach the defendant,[2] Fed.R.Civ.P. 4 was amended in 1993, *see supra,* to include the authorization of service of summons upon a *non-resident of the United States in federal-question cases* so long as such service comports with due process under the Fifth Amendment. Thus, if the non-resident of the United States has minimum contacts with the United States, not just the forum state, the non-resident defendant is considered amenable to service of summons. Yet, Rule 4 was not amended to authorize service of summons upon a *non-resident of the forum state (U.S. citizen or entity) in federal-question cases* so long as such service comports with due process under the Fifth Amendment. The new Rule does not reach this far.

■ Therefore, implicit in the newly amended Rule, is the notion that a federal district court is still to look to the long-arm statute of the state in which it sits, pursuant to Rule 4, in order to assert personal jurisdiction over a non-resident defendant in cases that arise under federal law, i.e., non-diversity cases, where Congress has not enacted a personal jurisdiction statute specifically for the federally created cause of action. Because the federal district court is to look to the state's long-arm statute for authority to exercise personal jurisdiction, the exercise of personal jurisdiction under the state's statute must comport with the due process clause of the Fourteenth Amendment which necessarily includes the limitations dictated by that Amendment that "ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Handley,* 732 F.2d at 1271 (quoting, *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980).

The Third Circuit Court of Appeals succinctly expressed the dilemma faced by the lower federal courts when they are asked to assert personal jurisdiction over a non-resident of the forum state in federal-question litigation via the forum state's long-arm statute. The Third Circuit stated:

We have recognized in the past that use of a state standard may produce anomalous results when applied to the litigation of a federal claim. *See DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 284 (3rd Cir.1981). In enacting a jurisdictional statute, a state legislature is generally limited by the due process constraints of the fourteenth amendment. Rule 4[ ], by remitting federal courts to state statutes, imposes similar fourteenth amendment due process restrictions on the jurisdictional reach of federal courts hearing nondiversity cases. This, in turn, leads to the prospect of a federal court refusing to adjudicate a federal claim because the courts of the state in which it sits could not accept jurisdiction. Although the uniform administration of federal law might be enhanced were Congress to establish a general federal question competence statute, in the absence of such legislation, we are required to follow the incorporative provisions of Rule 4[ ]. As we stated in *DeJames,* while use of state amenability standards creates anomalies, "it would be equally anomalous to utilize a state long-arm rule to authorize service of process in a manner that state body enacting the rule could not constitutionally authorize." 654 F.2d at 284.

*Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 296 (3rd Cir.) (footnote omitted), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985).

The Supreme Court having rejected the Fifth Amendment due process analysis of the Sixth Circuit in *Handley,* and the Federal Rules of Civil Procedure amended recently only to authorize national service of summons on *non-residents of the United States* where such service is consistent with the Constitution and laws of the United States, this court must follow the reasoning of *Max Daetwyler.*

---

**2.** *See, Handley v. Indiana & Michigan Elec. Co.,* 732 F.2d 1265, 1268–70 (6th Cir.1984) (citing cases demonstrating split in Circuits).

This court holds that it is to look to the long-arm statute of the State of Indiana pursuant to Rule 4 of the Federal Rules of Civil Procedure and employ the familiar Fourteenth Amendment due process analysis in order to ascertain whether this court may properly assert personal jurisdiction over Piece Maker.

██ In Indiana, the long-arm statute is set forth in Indiana Trial Rule 4.4(A), and it provides in pertinent part:

**(A) Acts serving as a basis for jurisdiction.**

Any person or organization that is a non-resident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state;

The purpose of Indiana Trial Rule 4.4(A) is to extend personal jurisdiction to the boundaries permitted by the due process clause of the Fourteenth Amendment to the Constitution of the United States. *Freemond v. Somma,* 611 N.E.2d 684, 688 (Ind.App.1993). The Rule has been construed to extend the personal jurisdiction of a federal court sitting in Indiana to the outer limits of due process. *Reed v. International Union of UAW,* 945 F.2d 198, 201 (7th Cir.1991); *Nu–Way Systems v. Belmont Marketing,* 635 F.2d 617 (7th Cir.1980). "Thus, a two-part inquiry of whether Indiana's long-arm statute confers the exercise of personal jurisdiction in a particular case and whether that allowance accords with due process is unnecessary; rath-er, the proper and economical inquiry is a 'single search for the outer limits of what due process permits.'" *Endress + Hauser, Inc. v. Hawk Measurement Systems Pty. Ltd.,* 1993 WL 276949, at *2, 1993 U.S.Dist. LEX-IS 11564, at *6, 26 U.S.P.Q.2d (BNA) 1394 (S.D.Ind.1993) (quoting *Oddi v. Mariner–Denver, Inc.,* 461 F.Supp. 306, 309 (S.D.Ind. 1978).

██ The Supreme Court of the United States has interpreted due process as requiring "minimum contacts" between the defendant and the forum state before the court may exercise personal jurisdiction over the defendant. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).[3] The defendant's contacts with the forum state must be such that the exercise of personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. The critical inquiry is whether the defendant's conduct and connection with the forum state are such that the defendant should reasonably anticipate being hailed into the distant forum court. *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980).

*Int'l Shoe* is viewed as setting forth two separate analytical tests to determine whether minimum contacts exist between the forum state and the non-resident defendant which would enable a court to exercise personal jurisdiction over the non-resident defendant. *Boone v. Sulphur Creek Resort, Inc.,* 749 F.Supp. 195, 199 (S.D.Ind.1990). Those two tests have been termed the doctrines of general and specific jurisdiction. *Id.*

██ A court may exercise general personal jurisdiction over a corporate defendant in "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify

---

**3.** Although the court's personal jurisdiction analysis in this matter will focus upon whether personal jurisdiction may be exercised by this court over defendant under a theory of *general* personal jurisdiction with the requisite "systematic and continuous" test instead of proceeding under a theory of *specific* personal jurisdiction with the requisite "minimum contacts" test, the underlying goal of the two analyses of personal jurisdiction is the same; does the exercise of personal jurisdiction over defendant comport with "traditional notions of fair play and substantial justice." *Int'l Shoe,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe,* 326 U.S. at 318, 66 S.Ct. at 159. Under a general jurisdiction analysis, the court is to scrutinize the nature and the quality of the contacts of the defendant with the forum state and determine whether those contacts "constitute [ ] continuous and systematic general business contacts ..." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). "In practice, the standard for establishing general jurisdiction is fairly high." *Intermatic, Inc. v. Taymac Corp.,* 815 F.Supp. 290, 293 (S.D.Ind.1993) (citing *Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d 1239, 1245 (7th Cir.1990), *cert. denied,* 499 U.S. 947, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991).

A court may exercise specific personal jurisdiction over a non-resident defendant only if the defendant possesses minimum contacts with the forum state and those contacts form the basis of the litigation. *Reed v. Int'l Union of UAW,* 945 F.2d 198, 203 (7th Cir.1991).

In the instant case, Carbide concedes that it cannot meet the requirements of the minimum contacts test associated with specific personal jurisdiction. However, Carbide asserts that this court may exercise personal jurisdiction over Piece Maker under a general personal jurisdiction analysis as Piece Maker has continuous and systematic contacts with the State of Indiana. Therefore, this court must determine only whether Piece Maker's contacts with the State of Indiana support the exercise of general personal jurisdiction.

It has been held that Indiana's long-arm statute incorporates notions of both general and specific personal jurisdiction. *Id.* at 201. Specifically, Trial Rule 4.4(A)(3) incorporates the notion that a defendant's continuous and systematic transactions with the State of Indiana that are unrelated to the

matter in dispute may give rise to the exercise of personal jurisdiction by a federal district court sitting in the State of Indiana. *Id.*

The court finds that Piece Maker does not have sufficient continuous and systematic contacts with the State of Indiana for this court to exercise general personal jurisdiction over it. Piece Maker's facilities consist solely of its offices and its manufacturing facility located at 2240 Stephenson Highway, Troy, Michigan. Piece Maker has no facility or employees located in the State of Indiana. None of the directors, officers or shareholders reside in Indiana. Piece Maker owns no real estate in Indiana, has no telephone listing in Indiana, and has no bank account in Indiana. Piece Maker is not registered or licensed to do business in Indiana. Purchasers of Piece Maker dies take possession and title of the dies in Troy, Michigan. All payments to Piece Maker are made at Piece Maker's office in Troy.

Dies purchased from Piece Maker from purchasers in Indiana, or purchasers who purchase dies from Piece Maker for use in Indiana, represent approximately, as a percentage of Piece Maker's total annual sales as follows:

(a) 4.5% in 1989;

(b) 0.5% in 1990;

(c) 2.5% in 1991;

(d) 0.5% in 1992; and

(e) 8.0% in 1993.

Only in the past year has Piece Maker seen any real increase in its annual sales to its Indiana customers, and that increase is not dramatic nor sufficient to establish a continuous and systematic relationship with the State of Indiana.[4]

Piece Maker has never participated in any trade show in the State of Indiana. In fact, Piece Maker has only participated in two (2) trade shows, both in Chicago in the past two (2) years. Moreover, Mr. Hoopingarner, the sales engineer for Piece Maker, indicates

4. *See, Cubbage v. Merchent,* 744 F.2d 665 (9th Cir.1984) (holding that although during a four (4) month period approximately twenty-six percent (26%) of an Arizona hospital's patients were from California and an Arizona doctor saw roughly one-hundred twenty (120) patients per week, of whom about twelve percent (12%) were California residents, no general personal jurisdiction existed over hospital or doctor in California the court), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985).

that no Indiana business was generated from Piece Maker's participation in the Chicago trade shows.

Piece Maker has never used targeted-advertizing methods in an attempt to gain more Indiana customers, that is, Piece Maker has not advertized in an Indiana publication or trade journal specifically targeted for an Indiana audience. The only publication that Piece Maker has advertized in is the annual, nationally-published *Thomas Register*. This is a multi-volume publication that advertises a broad range of services and products.

The fact that Piece Maker has not undertaken any type of advertizing campaign directed towards residents or businesses of Indiana is a factor weighing in favor of a finding of no general personal jurisdiction. In *Boone v. Sulphur Creek Resort, Inc.*, 749 F.Supp. 195 (S.D.Ind.1990), Judge Tinder made extensive findings of fact that demonstrated the non-resident defendant, a Kentucky corporation with its principal place of business in Kentucky, made considerable use of targeted-advertizing methods specifically directed toward Indiana residents in order to solicit more Indiana customers to its resort in Kentucky. The Kentucky corporation would use direct mailings to solicit business from individuals who had requested the information or had stayed at the resort itself. The corporation also advertized in regional magazines that specifically covered the Indiana region. Finally, the corporation operated a booth at the Indianapolis Boat Show since 1978 where the corporation distributed literature about the resort, solicited business and took reservations and deposits from customers.

These extensive and calculated contacts with Indiana indicated that the Kentucky corporation had "purposefully availed itself of the privilege of conducting activities within the forum State" in a continuous and systematic method. *Id.* at 200. Therefore, the exercise of general personal jurisdiction comported with the due process clause of the Fourteenth Amendment. *Id.*

The only facts supporting plaintiff's assertion that Piece Maker has continuous and systematic contacts with the State of Indiana warranting the exercise of general personal jurisdiction by this court is that one employee of Piece Maker, Mr. Phil Hoopingarner, the sole sales engineer of Piece Maker, solicits business from a scant number of customers who reside in Indiana. Mr. Hoopingarner resides in Saint Louis, Missouri, is the sole sales engineer for Piece Maker and is responsible for overseeing the sale of Piece Maker equipment in approximately thirty (30) states. Generally, Mr. Hoopingarner states in his deposition that he tries to visit the customers who reside in Indiana every two (2) to three (3) months to ascertain whether they require anything of Piece Maker. Mr. Hoopingarner indicates that he will call upon possibly three (3) to five (5) customers during his passage through Indiana. He also states that at times he may be called upon to help in the set up of a new product purchased by a customer. Finally, he indicates that he will also call the customers by phone.

■ Although one might be inclined to conclude that these somewhat regular contacts are continuous and systematic, the court holds that they are not of the quality or quantity necessary to enable a federal district court to exercise general personal jurisdiction over a non-resident defendant. The court makes this determination with the rule in mind that "the standard for establishing general jurisdiction is fairly high," *Intermatic, Inc. v. Taymac Corp.*, 815 F.Supp. 290, 293 (S.D.Ind.1993) (citing *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir.1990), *cert. denied*, 499 U.S. 947, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991), and that in the end, "the facts of each case must be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485, 105 S.Ct. 2174, 2189, 85 L.Ed.2d 528 (1985).

The case at bar is distinguishable from other cases where the contacts of the non-resident defendant with the forum state have been such that the court could exercise general personal jurisdiction over the non-resident defendant. For example, in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the Court held that the contacts of the foreign

corporation with the State of Ohio were sufficient to warrant the exercise of general personal jurisdiction over the foreign corporation without violating the due process clause of the Fourteenth Amendment. *Id.* at 448, 72 S.Ct. at 419–20.

The company's mining properties were located in the Philippines, but operations were halted because of the Japanese occupation during World War II. *Id.* at 447–48, 72 S.Ct. at 418–20. During this time, the president, who was also the principal shareholder of the company, returned to his home in Ohio and conducted business on behalf of the corporation from an office in Clermont County, Ohio. *Id.* The president kept office files of the company in Ohio and also carried on correspondence relating to the business and its employees. *Id.* He drew and distributed salary checks on behalf of the company, and also maintained two active bank accounts in Ohio on behalf of the company. Another bank in Ohio acted as a transfer agent for the stock of the company. Moreover, several directors' meetings were held in Ohio.

In essence, the Court found that the president conducted the business of the company in Ohio as if the company was situated in Ohio.

> Thus, he carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company. He there discharged his duties as president and general manager, both during the occupation of the company's properties by the Japanese and immediately thereafter. While no mining properties in Ohio were owned or operated by the company, many of its wartime activities were directed from Ohio and were being given the personal attention of its president in that State at the time he was served with summons.

*Id.* at 448–49, 72 S.Ct. at 419–20.

The facts in the present case indicate that Piece Maker has none of the pervasive contacts with the State of Indiana as the Benguet Consolidated Mining Company did with the State of Ohio in *Perkins.* The only presence Piece Maker has in Indiana is one salesman who periodically drives through the state to ascertain whether the four (4) or five (5) customers who reside in Indiana, and make up only eight percent (8%) of Piece Maker's total annual sales for the past year, require any products from Piece Maker. This sole contact does not rise to the level of "continuous and systematic contacts" as that test has been applied by other courts to find the existence of general personal jurisdiction.

In *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the Court revisited the subject of general personal jurisdiction. The Court determined that under the facts of the case the defendant, a non-resident of the United States, did not have continuous and systematic contacts with the State of Texas, and therefore, the exercise of general personal jurisdiction over the defendant did not comport with the due process clause of the Fourteenth Amendment. The Court found Helicopteros' contacts with the Texas to be: (1) sending its chief executive officer to Houston for a contract-negotiation session, (2) accepting into its New York bank account checks drawn on a Houston bank, (3) purchasing helicopters, equipment and training services from Bell Helicopters for substantial sums, and (4) sending personnel to Bell's facilities in Fort Worth, Texas, for training. *Id.* at 416, 104 S.Ct. at 1873.

The Court indicated that the purchases and the related training trips, standing alone were insufficient contacts for the State's assertion of general personal jurisdiction. *Id.* at 417–18, 104 S.Ct. at 1873–74. The Court found the facts in the case analogous to the facts in *Rosenberg Bros. & Co. v. Curtis Brown Co.,* 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1923).

In *Rosenberg,* the defendant, a small retailer from Oklahoma travelled periodically to New York to purchase large portions of the merchandise that he sold in his store in Oklahoma. This was defendant's only contact with the forum state. The Court held "[v]isits on such business, even occurring at regular intervals, would not warrant the inference that the corporation was present within the jurisdiction of [New York]." *Id.* at 518, 43 S.Ct. at 171.

In accordance with *Rosenberg*, the Court held in *Helicopteros* that:

> [M]ere purchases, even occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions. Nor can we conclude that the fact that Helicol sent personnel into Texas for training in connection with the purchase of helicopters and equipment in that State in any way enhanced the nature of Helicol's contacts with Texas.

*Helicopteros*, 466 U.S. at 418, 104 S.Ct. at 1874.

The facts of *Helicopteros* and *Rosenberg* are somewhat analogous to the facts in the instant case. The only contacts the non-resident defendants had with the forum States in *Helicopteros* and *Rosenberg* were purchases they made from an in-state resident corporation. In the instant case, the reversal is true. The only contact Piece Maker has with the State of Indiana is that a scant number of Piece maker's customers who purchase its products reside in Indiana. These regular purchase transactions and transaction-related contacts of Piece Maker with Indiana are insufficient to satisfy the limitations imposed by the due process clause of the Fourteenth Amendment and confer general personal jurisdiction over Piece Maker. *See, Helicopteros*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Perkins*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Rosenberg*, 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1923); *Shute v. Carnival Cruise Lines*, 897 F.2d 377 (1990) (collecting cases), *rev'd on other grounds*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). For this court to find that general personal jurisdiction exists over Piece Maker under the facts presented, the court would basically be equating the "continuous and systematic" test of *Helicopteros* to the "minimum contacts" test of specific personal jurisdiction found in *Burger King* and like cases. The court refuses to do so.

Accordingly, based on the foregoing analysis, the court finds Piece Maker's contacts with the State of Indiana to not be continuous and systematic. Therefore, the court holds that it may not exercise general personal jurisdiction over Piece Maker.

 This court, having determined that it lacks personal jurisdiction over defendant, and consequently that determination dictating a finding that venue is also improper, now turns to defendant's Alternative Motion to Transfer to the United States District Court for the Eastern District of Michigan. Defendant requests a transfer of this cause of action pursuant to 28 U.S.C. § 1404(a).[5] However, the court considers 28 U.S.C. § 1406(a) to be the more appropriate statute upon which to base a transfer of this cause of action. 28 U.S.C. § 1406(a) states:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Because this court lacks personal jurisdiction over defendant, venue is also inappropriate in this forum, and the court may either dismiss the case outright, or in the interest of justice, the court may transfer the case to any district in which the cause of action could have been brought originally. This court, from where the transfer is sought, need not have personal jurisdiction over defendant before it can apply 28 U.S.C. § 1406(a). *Saylor v. Dynieweski*, 836 F.2d 341, 345 (7th Cir.1988) (citing, *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)). The decision whether to transfer is entrusted to the discretion of the district court. *Hapaniewski v. City of Chicago Heights*, 883 F.2d 576, 579 (7th Cir.1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1023 (1990).

 Defendant asserts that personal jurisdiction and venue are proper in the United States District Court for the Eastern District of Michigan and that the court should therefore transfer the case to that court. The court agrees.

---

**5.** 28 U.S.C. § 1404(a) states:

For the convenience of parties and witnesses, in the interest of justice, a district court may trans-

fer any civil action to any other district or division where it might have been brought.

Venue for patent infringement cases is governed by 28 U.S.C. § 1400(b) which states:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

Thus, the case may be brought where Piece Maker resides, Michigan. Furthermore, Piece Maker is a corporation, and the 1988 amendment to 28 U.S.C. § 1391(c) reads in pertinent part:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

In *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed.Cir.1990), *cert. denied*, 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991), the court held that the 1988 amendment to 28 U.S.C. § 1391(c) also redefined "resides" in 28 U.S.C. § 1400(b), and concluded:

> [T]he first test for venue under § 1400(b) with respect to a defendant that is a corporation, in light of the 1988 amendment to § 1391(c), is whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced.

*Id.* at 1584.

This redefinition of "resides" in 28 U.S.C. § 1400(b) effectively renders § 1400(b) redundant to § 1391(c) with respect to a patent infringement defendant that is a corporation. Thus, because Piece Maker is a corporation, whether venue is proper in the Eastern District of Michigan for this patent infringement case turns solely on whether Piece Maker is subject to personal jurisdiction in the Eastern District of Michigan.

The court cannot conceive of any reason as to why Piece Maker would not be subject to personal jurisdiction in Michigan. The facts recited *supra* clearly indicate that Piece Maker would be subject to personal jurisdiction in Michigan as Piece Maker resides in Michigan and purportedly conducts most of its business within the territorial limits of that State. Clearly, Carbide could have instituted the present suit in the Eastern District of Michigan. Therefore, in the interest of justice and in accordance with the purpose of 28 U.S.C. § 1406,[6] the court grants defendant's Motion to Transfer to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1406(a).

## CONCLUSION

For all of the foregoing reasons, defendant's Motion to Dismiss is DENIED, but defendant's Motion to Transfer to the United States District Court for the Eastern District of Michigan filed on February 4, 1994, is GRANTED.

---

6. *See, De La Fuente v. I.C.C.*, 451 F.Supp. 867 (N.D.Ill.1978).